Mr. Herzog. May it please the court, my name is Paul Herzog. I'm a lawyer who practices in Fayetteville, North Carolina, and I represent Mr. Lloyd Dodwell of Johnson City, Tennessee. My colleague is Mr. Randolph Lee, City Council Fayetteville. He's from Monroe and represents Mr. Hill, the codefendant. What we've got here and I think what this panel, the question this panel has to answer is first whether or not Lloyd Dodwell consented to a extension of the traffic stop that he had that had been initiated by Detective McMurray on May the 2nd, 2012 at about 649. That traffic stop went on for about 15-16 minutes during which time Detective McMurray started sort of an unrelenting questioning of Mr. Dodwell that had nothing to do with the purposes of the stop. Where were you? Where were you? Where were you going? Where do you live? Why were you there? Who did you see? Have you been to prison? Where did you go to prison? How long have you stayed in prison? This went on for the entire time he was writing the ticket. At the time McMurray So didn't he return to his car? McMurray? McMurray, as I understand the facts Judge Duncan, McMurray got out of the car after about four minutes. He talked with Lloyd Dodwell for about nine or ten minutes. He gets out and returns to the car and talks to Hill for approximately one and a half to two minutes asking him similar type questions. McMurray told the district court in his testimony that the reason those questions weren't recorded is apparently he left his shoulder marked in the car. The only purpose of my question was I was understanding you to say that the talking was continuous for the seven minutes. Yeah, there was nine minutes of the entire thing. You weren't there, we weren't there, but there's the video. Yes ma'am. Okay, now during the video the police officer is obviously doing something on his what I colloquially call the machine, right? I believe that. Maybe he's just about as fluent on his machine as I am. He's doing a lot of things. What you would like to do is have this be like the recent Supreme Court case, right? Yes. But all of these things took place before the ticket happened. Correct. Everything you're telling me. Correct. And everything in the Supreme Court case took place that was the reason why the court came to the conclusion it did took place in the two minutes after the ticket was issued. Correct. So that seems to me to be a, because Justice Ginsburg had earlier written an opinion dealing with things that happened before the ticket was issued. So to make sense of the two opinions written by the same person, we have to regard the fact that the ticket being issued is significant. Don't we? There's no question. I think that's a very reasonable approach. And so we know that in your case we're just talking about pre-ticket conversation from the officer to these two gentlemen. Yes ma'am. And his use of the machine in writing the ticket. That's the first, yeah, about sixteen, thirteen, fourteen, fifteen, sixteen minutes there. Wait a minute. The, some of that time, because as I understood it, he gave him the ticket seventeen minutes after activating blue lights. So some of that time had to be spent on the machine. Right. Approximately thirteen and a half minutes was spent, well there's nine minutes and there's a short break and then he's breaking back to the machine. So maybe ten to, of that thirteen minutes, there's a four minute, he pulls him over, there's a four minute gap, The other point is that you keep trying to include, you keep trying to make it sound as though it was seventeen uninterrupted. That's the only point I'm making. Okay. Well, let's get to, at the end of the seventeen minutes, the ticket is issued. Okay. And the deputy hands the ticket and the registration to the car back to my client. Right. And at that point he looks at him and says, can I talk to you a minute? And I think it's almost a verbatim quote, can I talk to you a minute? My client says yes. Well, we would contend, first of all, that when someone says can I talk to you a minute, it doesn't mean that you're going to talk to them for an additional nine minutes or forty-five seconds, an additional thirty minutes. You've waived any argument about the post-arrest. Uh-huh. You've waived it. So I don't even know why we're talking about it. For post-ticket, if you will. I don't believe we have waived any argument, but if we have, we would go to the point in time where, assuming there was consent for that additional nine and a half minutes for questioning. At the point, at the end of that particular set of questioning, Deputy McMurray looks at Mr. Dogwell and says, can I have consent to go into your car? My client says, no, sir, you can't. It's not my car. I can't give that consent. I'm not going to. Before we go any farther, I'm sorry, could you tell me where there was a specific objection? I was also thinking there might have been a waiver, so can you help me with the preservation there? Well, the preservation, if you look at both of the magistrate's recommendation and the district court's final order. I'm not talking about what they said, of course. I'm talking about what you said. I thought I was in trial counsel at that point in time. But what was objected to had to do with more along the lines of whether or not, assuming there was a consent, was there a reasonable suspicion to continue the stop? That's what's in Judge... Was there a specific objection to Warthof and post-ticket? I think it's on about page 132. Well, that's okay. You just want to wait and look for it when you sit down. I don't want to take up your time, but that is a question. On page 132, in the last full paragraph, we would contend that that was the objection. The questioning was more lengthening. Dogwell contends that the traffic stop was extended beyond the time necessary to handle the conversation reasonably. Sorry, can I ask you a question about the first 16 minute or so period before the warning? Yes. Am I understanding your position right? It's that this off-topic questioning generated at least a de minimis delay? Yes. And that that is impermissible under Rodriguez? I would think so. Let me stop you because I'm just warming up. This is the actual question. So how do you respond to the government's argument that under Davis, your client doesn't actually get the benefit of Rodriguez when it comes to exclusion? It doesn't matter. The officer was entitled to rely on the Fourth Circuit's pre-Rodriguez law, which said absolutely a de minimis extension is fine. I would respond to that by pointing to the Williams opinion where... It seems like the government didn't raise it there. They did not. And this court simply said we're going to apply Rodriguez because it's come out during the pendency of this appeal. And I think that's always been the case. You think if the government waives it once, they're kind of stuck with that? Well, I would contend that that's the rule, that if relevant precedent comes out during the pendency of appeal, it's applicable. Well, not under Davis. Not as to the exclusionary remedy. Not necessarily, right? Well, that's our position, that this court has done that and that we ought to follow this court's precedent. It's not precedent unless it's a holding. Has it actually been addressed? In the Williams case on 808 Fed 3rd at 245, this court said in April of this year, while this appeal was pending, the Supreme Court decided Rodriguez versus U.S. And Rodriguez held absent reasonable or takeable suspicion of criminal activity, a detaining officer may not extend an otherwise completed traffic stop. So they certainly applied it. They applied it and they just said what Rodriguez held. Yes, and they didn't, and they went on to apply what Rodriguez held to this particular, to the facts in Williams' case. So I would argue that as long as, it's fair game as long as the appeal is still pending under the precedent of this court. But what does that mean for a police officer when analyzing behavior that took place at a point in time before Rodriguez? How can he be judged by, with respect to the exclusionary rule? What purpose of the exclusionary rule does it serve to apply Rodriguez retroactively? I would contend that Williams and Rodriguez are simply extensions. When Williams wrote his... What purpose, that's not... Okay, my question though is, if an officer at the time doesn't know that Rodriguez is going to be decided and the law in effect at the time, allows him to do what he does, what prophylactic effect does the applying the exclusionary rule to that conduct retroactively serve? I see the red light has come on, may I continue? Yes, you can answer the question. I'm not sure. And all the other questions we might have. I would argue that, and I haven't really gotten to my main point yet, which is reasonable suspicion. Well, you have time on rebuttal. Our questions come first. Well, I would think that it probably doesn't add that much. And I would have to come up and mount my second line of defense, which is whether or not there was in fact reasonable suspicion after the defendant denied access to his car. So I will sit down and talk about that in my rebuttal. Thank you. Good morning, Randy Lee for Darren Hill. Good morning. I'm hearing correctly I host some questions about this issue of procedural waiver in district court. About what? Waiver, preserving the rights. Right. Well, the government made the argument it's brief and you never filed a reply brief, so we don't know what your response is. So now maybe we'll know. Well, this may be a leisure to many, but let me see if I can answer that question if I could. Okay. Our response, we felt, wasn't necessary because the district courts, not the magistrate judges, but the district court's order adjudicating these Fourth Amendment claims in this appendix at page 139, talks about the district court judge's standard of review. And in this case, the district court clearly held, stated it was reviewing the magistrate judge's proposed findings and conclusions of law de novo. So our analysis in debating whether to file a reply brief or not was essentially this. The district court considered the matter from the magistrate judge de novo. Therefore, when the appellants Hill and Dodwell gave their conditional plea notice, preserved it for presentation on appeal. Are you familiar with how you have to make objections to what the magistrate judge does? I am, Your Honor. I am. I'm very aware of that. Right. And so you think that the fact that you ultimately pled, your client ultimately pled, to this does away with that requirement to make objections to what the magistrate judge recommended? That doesn't negate the requirement to make objections to the magistrate's recommendations. But when the district court judge itself says we are going to review what the magistrate court judge did de novo, findings and conclusions of law, in light of what you preserved, not just going to, it doesn't start the whole case over. That's why they have the magistrate judge. Well, that is correct. But in this case, the district court judge went on to give some analysis to the various factors. In spite of what this court may see as a very effectual objection by both appellants, really, to the magistrate's memorandum and recommendations. And I will concede that the appellant's objections to the M&R were very general. General? General. Thank you, Judge. I'm not going to lack in specificity, but they both said in so many words that we believe that the magistrate judge's findings and recommendations did not comport with conceitedly at that time prevailing Fourth Amendment law. And as we all know, since then, prevailing Fourth Amendment law, in fact, U.S. law, has changed somewhat. And the question, I think, partly is, at least this is the argument we're trying to advance, that Rodriguez can and should apply. I don't want to say retroactively. This is not a Guidelines Amendment case or something like that. But trying to respond to your concerns, Judge Duncan, at what point do we apply Rodriguez retroactively? The question was, we have these officers on the side of the road. They have the laws. They understand it. And they're complying with the laws. They understand it. And, in fact, I would say, yeah, that's fair game. But do we look at having – I don't understand what fair game means. Well, I think your question was a fair – Part of the reason for the exclusionary rule is to punish bad behavior. I understand. And if the behavior comported with the law in existence at the time, how does applying Rodriguez retroactively advance the purpose that the exclusionary rule was designed to serve? Candidly, I don't have a good answer. Worse that I did, I don't. Except to argue and suggest that to not apply it to cases that are perking up from district court to the appeals court is to have different strata, if you will, of constitutional laws and principles that apply. And we're not looking just at we maintain to the police officer's actions, but we're looking to vindicate our client's Fourth Amendment rights. I really am not trying to argue with you or anything, but is there a way to read Davis? Do you have sort of a doctrinal answer? It seems to me that Davis has already addressed all of this and said we just don't apply Rodriguez to pre-Rodriguez searches for purposes of the exclusionary rule, where, at least where, circuit law was very, very clear. And the Fourth Circuit had made it extremely clear that a de minimis is – am I missing anything about Davis? Do you have a doctrinal reading of Davis that avoids that outcome? Judge Harris, I don't really have a doctrinal reading. I think that you're correct. Can I go back to the waiver argument? As I understood what you said, well, we may not have – or we – your client's lawyers below may not have objected to post-ticket activities, when they were objecting to what the magistrate judge did. But the district judge went ahead and decided it and did not hold you to that. And therefore, it's fair to argue it in front of us. Is that what your position is? That is my position. All right. So the district judge says, at the end of his opinion, to detain the defendants beyond the termination of the stop, Deputy McMurray needed either the permission of the defendants or reasonable suspicion of illegal activity. Here, Deputy Murray had both. Neither defendant objects to the magistrate judge's legal analysis contained in the M&R concerning the events following the conclusion of this traffic stop. After careful consideration of the M&R, the court finds that the magistrate judge's proposed findings of fact are correct and his proposed conclusions of law are consistent. So I don't understand how the district judge did away with your waiver. My response to that would be and is this. The district court, I think, could easily have resolved that issue by, in a very truncated fashion, adopting That was pretty truncated. There are 19 pages of this opinion and there are three sentences devoted to this. Right, but in the district court judge's opinion, he spends a great deal of paper going into the facts. And he didn't have to do that to adopt Your response can't be that the district court is responsible that you can rely on the district court's factual analysis to stand in lieu of the appellant's obligation to have preserved error below. Really, that can't be the response. You presented me with a very difficult question. You're saying that, well, your honor, my dog ate it. Right. And this is one of those touchy situations in which we as advocates have competed. And you inherit a record. But all I'm communicating is that going along the line of attributing responsibility to the district court isn't probably the best route. It's probably not the best route, but I would suggest It's the route we have before us. Thanks very much. Thank you. Thank you very much. May it please the court. Anthony Enright for the United States. The district court properly denied the motions to suppress made by Mr. Hill and Mr. Doddwell. As this court alluded to, I'd like to address the stop. There's two parts to it. Pre-ticket, as I think your honor has mentioned, and post-ticket. The pre-ticket period the district court found was about 16 minutes long. The district court did find that about two minutes of that period of time constituted a de minimis delay that was unrelated to the purpose of the stop. But, as I think this court discussed, under the Davis decision, the exclusionary rule doesn't apply because this court's precedent in effect at the time of the stop clearly established that a de minimis delay was appropriate under the Fourth Amendment. So, as to the 16 minutes before the ticket was issued, the court's finding was correct that suppression is not warranted, if for a different route. Can I just ask you a question about your position on that first 16 minutes? You also argue, am I reading this right, in a footnote, that anyway there really wasn't any delay and this would have been fine under Rodriguez? No, your honor. There's two, I think, there's two different arguments being made. Don't you think Rodriguez is distinguishable in this case? I think Rodriguez is distinguishable with respect to the portion of time that the officer spent working on his computer while also speaking to Mr. Duck. I would have thought the biggest distinction was that it dealt with post-ticket activity rather than free ticket activity. That is true too, your honor. Well, the Supreme Court seems to think that that's crucial, I think. If you read Justice Ginsburg's two opinions together, I think you'd come to that conclusion. I do think that's correct and the court had previously held that. It must not have thought it was so persuasive or you would have led with it. Or it would be somewhere in your brief. That's true, your honor. I think you were dealing with, don't you have to deal with the other part of Rodriguez where they say, look, you get as much time as it takes to write a ticket, period. You don't get any extra credit for doing it fast and then you can't shift around pre-ticket, post-ticket. You got to do everything as long as it would take you to write the ticket, period. That's what you're up against. Certainly, your honor. And that is the difference between the de minimis delay rule and what I think are three other reasons why I think the post-ticket portion didn't warrant suppression. The first is one that this court... So are you conceding that it was preserved? Oh, certainly not. The first of those issues is waiver. Waiver is the appellants did not raise the issue despite being required to do so by Rule 59 because a magistrate judge had made the determination that consent had occurred and there was reasonable suspicion. That failure to make the objections on those grounds weighs the issue both under the plain language of Rule 59 and under this court's decisions including in Majette and the like. Can I stay with the pre-ticket for just a second? Certainly, your honor. Are you arguing that that Godwell and Hill would win under Rodriguez because of the concern about all the activity has to be directed to preparing the ticket? And if so, what do you do with Davis? Not necessarily, your honor. I apologize, your honor. I do think it would be a much more difficult case without Davis in the light of Rodriguez because the district court found that approximately two minutes... If you didn't have existing case law on point, is that what you're saying prior to Rodriguez? I'm just trying to make sure I understand what you're saying. If we didn't have the de minimis delay doctrine to rely on, this would be a much more difficult case because the district court found that there were about two minutes of delay that was unaccounted for by relationship to the purpose of the stop that was unrelated to any justification that it had at the time. But the court found unequivocally that it was de minimis and it was around two minutes, which is less than this court has found to be de minimis. This is mostly a time when the officer gets out of the car, leaves his machine, and is talking to the other person. Correct, your honor. The court found very explicitly that the other time spent speaking with Godwell about unrelated matters was he was continuously working on his computer in furtherance of issuing the ticket. This really isn't a problem for this case, but doesn't that strike you as somewhat counterintuitive? I mean, maybe you guys are all better with your machines than I am, but when I'm doing two things, they both take longer than when I'm doing one. I mean, if I'm trying to type something and also talk to a law clerk, the conversation suffers and it takes me longer to do what I'm doing on my computer. Your honor, there wasn't a specific fine. It could be. But where does that go, then? I don't think, and I think the point. I mean, I think that's, I mean, social sciences tell us that's true, that when you think you're multitasking, you're actually doing badly at both. I understand that point. I think that's exactly the kind of circumstance that a district court would need to address in the first instance when it doesn't have the benefit of the de minimis delay doctrine. Because of the de minimis delay doctrine, the district court said, well, you know, there may have been some delay, but if there was any delay, I don't need to look at it because it was de minimis. This strikes me that under Rodriguez, this is going to be a hard argument for the government that, oh, the fact that he was doing two things at once did not at all, not even in a de minimis sense, extend the time it took to write the ticket. I do think that would be a more difficult case in that circumstance. I would mention that there are decisions, you know, Arizona v. Johnson and the like, saying that they can do multiple things at the same time, so long as it does not measurably extend the time. I mean, I suppose the question. Rodriguez? I think it was, Rodriguez reaffirmed the statement in Arizona v. Johnson that that was true. I think that's right. Let me turn back briefly to the waiver issue. I think we talked about that in some detail. Even if there is no waiver, however, the district court found and certainly didn't clearly err that Mr. Dodwell said immediately after receiving the ticket, yeah, in response to a question, mind talking to me for a minute. The district court wasn't required to interpret that in a literal sense that might be appropriate for a legal document, but not necessarily a conversation. He had the benefit of Deputy McMurray's testimony. Deputy McMurray said unequivocally, well, he agreed to be there and he remained there. Watch the video, both the magistrate judge and the district court. I don't know if this court has had the opportunity to view it, but it's pretty consistent with the court's finding. Can I just ask a factual question? One defendant says, sure, I'll stay here for a minute to answer questions. How does that cover the other defendant? Where's the consent from the other defendant? Two responses to that, Your Honor. This court has held first that the driver's consent is sufficient during a traffic stop to allow the detention to continue, at least for a time. Second, Deputy McMurray shortly thereafter went over to Mr. Hill and asked him, would you consent to talk to me too? And he said yes. So I think between both of those and the waiver, that's not really an issue that arises in this case. And additionally, the consent was corroborated, I suppose, by Mr. Dodwell stated later when he was asked, do you consent to search the car? Something I want to address too. We're not contending that he consented to a search of the car. The search was supported by probable cause established by Mr. Dodwell in fact said, no, I can't consent. It's not my car. Which just goes to show that when he doesn't want to consent to something, he wasn't shy about that. On reasonable suspicion, at what point in time you thought the officers got to reasonable suspicion? Your Honor, I think they got to reasonable suspicion by the time they issued, by the time Deputy McMurray issued the warning. Not until then? Not until, perhaps before then. I would suggest probably at the time, at least when Deputy McMurray had heard from Mr. Hill that they had been at a basketball game. Once they had the inconsistent stories. That was clear to me from your brief. You think at that point surely there was reasonable suspicion. But are you conceding that there was not reasonable suspicion until they got the inconsistent stories? I think it would be a tougher case to make to say there was no reasonable suspicion before the inconsistent stories. I don't know that that's not the ground on which I would justify the 16 minute time, but I don't want to go so far as to concede it. I would say that with those inconsistent stories, with knowledge that they had been traveling from Atlanta with histories with two histories of drug dealing, very vague answers about who owned the vehicle. Vehicle owned by a third party. That reasonable suspicion was present and that would have justified detaining Mr. Dodwell and Mr. Hill for a time to let Kira conduct her dog sniff. I'm just asking because I thought I remembered that the officer testified that he became suspicious much earlier in the encounter. Once he had the sore city and it's not their car and they can't find the paperwork and he's acting nervous, the cat, whatever it was. And at some fairly early point in the proceedings, he in fact was suspicious. He did, Your Honor. That was reasonable suspicion. Well, he testified that he became increasingly suspicious. And the reason I have focused on that point in time of the ticket is because I think that is when reasonable suspicion plays a role. I think the court appropriately found that the prior 16 minutes were justified by the purpose of the stop plus the de minimis delay rule. So reasonable suspicion was not necessary at that point. Leave aside our precedent for a minute and just focus on Rodriguez. Is it the government's view that post Rodriguez leaving aside circuit precedent for a while, there can be no unrelated checks during the stop? No, that's not our position, Your Honor. Well, so how, I thought I understood in response to some of my colleagues' earlier questions that you thought that the 16 minutes was problematic in and of itself. And I guess I wanted to know why that was. In other words, you leave aside your waiver arguments. Leave aside... I don't want to overstate it, Your Honor. I guess I... The two minutes of that 16 minutes were unrelated. And therefore made the 16 minute thing problematic. Oh, I'm sorry. Thank you. Is that what you're saying? I think the court's factual finding that there were two minutes of off-topic conversations, completely unrelated, makes it a more difficult case. I certainly not... I didn't understand Judge Motz. I'm just now appreciating what I think is Judge Motz's question. Does that two minutes contaminate the 16 minutes? Yes. No, Your Honor. But why not? I think that you... I thought that you said that after Rodriguez, that's a problem. And if we hadn't had this subsequent case and we hadn't had prior circuit precedent, that would be a problem. And I'm telling you to disavow all those. We're in some circuit where we didn't have those. I'm not... Maybe I misunderstood or misresponded. I'm not understanding Rodriguez. I'm asking for some help here. What I think Rodriguez suggests is that at least under its facts, which is where you have a stop, and then after the stop is completed, a delay of eight minutes. Right. But the government didn't focus on that. What we were talking about before is all pre-stop. Yes, Your Honor. Okay. I do not believe that... Our position is not that an officer has an unlimited amount of time to ask unrelated questions before the stop. Okay. So, does he have any time to ask unrelated questions? I think it depends on a number of circumstances that may not be present in this case, Your Honor. Certainly, I think it's reasonable for a police officer to ask a passenger if he looks like he might need help. Do you need help, sir? It may have nothing to do with the stop. It may not have anything to do with the crime. Does he have permission to ask for two minutes about an unrelated investigation? I don't think that's a question that the court needs to answer, and I don't think it's necessarily clearly established under current law. You don't think that's clear from Rodriguez, that the court says in Rodriguez you may not send the period of time before you give the ticket by doing unrelated things? You have as much time... The amount of time you may take to give the ticket is the amount of time it should reasonably take you to write a ticket, period. That's how I read it. The time comes before or after. You have as much time as it takes to write a ticket, and you may not extend that time. Do you think I'm overreading Rodriguez? It seems at least consistent. Rodriguez says that. Doesn't Rodriguez say that? Well, Rodriguez says that, but as Judge Motz pointed out, the factual circumstances are a bit different. Well, let's put that aside, the factual circumstances. Rodriguez also says the seizure remains lawful only so long as unrelated inquiries do not unmeasurably extend the duration of the stop. What does that mean? The two minutes unmeasurably extend what would have been a, what, 14-minute stop before? And doesn't that necessarily contaminate the other 14? I don't think it contaminates the other 14. Well, why not? Because as an adder, it unreasonably extends. If it is an unreasonable... I mean, is there something that's not an unreasonable extension, but an extension? There may be a de minimis. Well, I think there might be some circumstances where it is appropriate for an officer to ask a question. And I do see, well, it's not... I do see to ask a question or to conduct a step that might be off topic. One example for it is if the officer needs some help. There's a whole separate exception for kind of assistance. I can't remember what it's called, but you know, when the police are acting more like social workers. That's a whole separate... Certainly, Your Honor. It may not necessarily rise to that level, but the touchstone is always reasonable. I guess you're suggesting that here the two minutes, the two extra minutes were bad, bad, bad, right? Yes, Your Honor. I'm suggesting that the two minutes, the two minutes themselves are a de minimis delay that was supported by the de minimis delay rule. It would be much more difficult to justify. Correct. And we just have Rodriguez. Correct. I would not be justifying this search based on those two minutes. It doesn't matter that they took place prior to the ticket. Because you have language later in the opinion that says the critical question then is not whether the dog sniff occurs before or after the officer issues a ticket, as Justice Alito supposes, but whether conducting the sniff prolongs, that is, add times to the stop. Yes, Your Honor. I do not believe that if we didn't have the de minimis delay rule and we had Rodriguez, I do not believe that we would prevail on the 16-minute portion. But it is because of those two minutes. I do want to mention, just in response to Judge Duncan's question, I don't think the two minutes causes a problem for the rest of the time. Well, you just said it did. And I apologize if I said... I thought it would be difficult to justify the 16 minutes in terms of the two. And I realize... Two minutes would be enough. So you do think it does end if we don't have prior precedent. And I don't understand why you would want to say that. But you did. And what you seem to say is because it was extended for that de minimis period, the 16 minutes is no longer possible to justify. I apologize if I've said something that is inconsistent with that. What I meant to... My position is, from the ground up, if you'll allow me to restate it, is that the two minutes would be impermissible and would itself violate the Fourth Amendment. And that would make the search invalid in the absence of relying on Davis. I don't know that it has any effect on the other 14 minutes. But because those two minutes occurred, if those two minutes required application of the exclusionary rule, that would be enough. The consent and the reasonable suspicion come after the bad two minutes. If you already had consent or reasonable suspicion at minute three, it wouldn't really matter. Not that they contaminate the first 14 minutes. It's that they contaminate what comes after the consent and the reasonable suspicion. Absolutely, Your Honor. We, the people of the United States, need to justify both the 16 minutes before the traffic stop occurred and the time after. And it doesn't help you if you can only justify the first 14 minutes because then you didn't have what you needed for the second 17. Correct. The ground on which we seek affirmance based on the first 16 minutes is Davis after Rodriguez. And the ground on which we seek affirmance of the portion afterward is waiver, consent, and reasonable suspicion. I don't know why you want to dig that hole. I don't particularly want to dig that hole, Your Honor. You just did. Well, I haven't, I have not, we haven't relied on any ground to support the 16 minutes other than Davis. And we don't believe that the issue comes up in this case. The Supreme Court has held in a couple of circumstances, I think when it held, I don't know if I cited it, but the Illinois v. Crowell decision where it was good faith reliance on a statute. They held you didn't need to address whether the statute was actually invalid if you apply the good faith doctrine. And I think that would be appropriate here. That's the ground on which we are seeking to avoid application of the exclusionary rule to the first 16 minutes. I do believe it's a more difficult case if we go beyond that and that's why we haven't done that. I see my time is almost up. I won't take any more unless the court wants me to. And I'll close by asking the court to affirm the decision of the district court. Thank you. I start my rebuttal by just trying to answer Judge Harris' questions about when Detective McMurray began to suspect something was going on. If you look at page 7 of the appellant's brief in the footnote number 3, he testified during the first 3 minutes of his conversation with Mr. Dodwell. He became suspicious because Mr. Dodwell was driving a borrowed car, that he had a little trouble finding the registration, that he was coming from Atlanta. That's the funniest argument because everybody's making, you're making the government's argument, the government's making your argument. She has the question, I answer it. At any rate, Judge Mott's got us to focus on the first part of what was going on here. And let's assume, well maybe I'm wrong there too. Maybe we're all talking in cross purposes. But at any rate, I'd like to talk about what happened. I understand. I think maybe we walked into the twilight zone or something. Perhaps I brought it from North Carolina. I don't know. I understand you brought it from North Carolina. At any rate, when we get to assuming that Davis controls it, there is no de minimis problem. We still have the problem of what happens when the officer says to Mr. Dodwell, can I go in this car and look around? And he says, no, you can't do that. And then there's some, a little more conversation. He says, well how about just let me move this car? How about just let me move it? No sir, I'll be glad to do that. I'm not going anywhere. At this point in time, this is the point in time when Deputy McMurray had to have some reasonable suspicion. And we contend that under Williams, he never had reasonable suspicion. You have in Williams a rental car. In this case, we have a borrowed car. The only difference I see between the two is that Mr. Williams paid for the privilege of using the car. The car was not stolen. There's nothing wrong with borrowing a car. We have an issue. They didn't know who owned the car, right? We do know who owned the car. No, but they told the officers they didn't know. Well, they told, I think that Mr. Dogwell said that car belongs to Mr. Hill's girlfriend. And they had a registration. And he asked, well where do they live? And he says they live on the address that's listed on the paper on the registration. He said, where have you been? I've been to Atlanta. But, you know, we have a rental car versus a borrowed car. The fact that he can't find the paperwork right away, I don't think is unusual. He wouldn't have been the person to put the paperwork in the car. It could be any number of places. I find that my time is up. No, no, no. You have another minute. Now my time is up. Well, I didn't get to it. Judge 22. Do you have something else you want to say? Yes, Your Honor. I would say that Williams is controlling here on the issue of reasonable suspicion. The factors are virtually identical. And we would contend that even after 30 minutes of interrogation, he still had not developed reasonable suspicion. And in that even if you find that there's a waiver, you find that Davis supplies, there is still this overwhelming problem of non-consent that they haven't really addressed. And that there had to have been reasonable suspicion to overcome it and that didn't exist. Thank you very much. Mr. Lee, do you have a rebuttal? I'm sorry. May I please inform, unless there are any questions, I don't think that I can bring clarity to this. You can leave it to our own devices. I wish that I could, but I can't. Thank you very much. I understand that it occurs to Mr. Lee that you have been appointed and you are representing them by the court's appointment. We appreciate your efforts. We will come down and greet the lawyers and then go to our last meeting.
judges: Diana Gribbon Motz, Allyson K. Duncan, Pamela A. Harris